385 A.2d 466

**Emmet H. McGUIRE, Admrx. of the Estate of Joy M. McGuire, Appellee,**

v.

**ERIE LACKAWANNA RAILWAY COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 16, 1976.

Decided April 13, 1978.

532

Robert L. Walker, Meadville, for appellant.

Andrew J. Conner, Erie, for appellee.

Before JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal from an order denying a motion for summary judgment.

On February 2, 1972, Joy McGuire, then a high school student, was struck by an Erie Lackawanna freight train at a grade crossing; she died the same day. On October 15, 1973, her father, appellee here, filed a petition with the Erie County Register of Wills, requesting that he be appointed administrator of his daughter's estate. On January 29, 1974, he paid the filing fee for the issuance of the letters of administration. However, the letters were not issued because he had not posted bond when he filed the petition. It was therefore necessary for him to return to the office of the Register of Wills to post the bond.

Before returning, appellee instituted this suit as a survival action, alleging in the complaint that he was the administrator of his daughter's estate. The complaint was filed on February 1, 1974; on February 2, 1974, the statutory period of limitations expired. On February 21, 1974, appellee returned to the office of the Register of Wills, posted the bond, and letters were issued.

The railroad, appellant here, pleaded the statute of limitations in its answer to the complaint and new matter, and again in its motion for summary judgment. When the motion was denied, the lower court certified its order to this court as involving "a controlling question of law as to which there is substantial ground for difference of opinion" the resolution of which "may materially advance the ultimate termination of the matter." See Act of July 31, 1970, P.L. 673, No. 223, art. V, § 501, 17 P.S. § 211.501.

1

Appellant argues—and appellee does not dispute—that a decedent's estate cannot be a party to litigation unless a personal representative exists. *Ehrhardt v. Costello*, 437 Pa. 556, 264 A.2d 620 (1973); *Thompson v. Peck*, 320 Pa. 27, 181 A. 597 (1935). The question is whether a doctrine of "relation back" may be applied, so that the action of appellee in

instituting this suit within the limitation period but prior to his appointment may be validated by his appointment after the period.

Such a doctrine can be found in the cases. So far, however, it has been restricted to a ratification of actions beneficial to the estate. *See Lovejoy v. Georgeff,* 224 Pa. Super. 206, 303 A.2d 501 (1973) suit *against* an estate for which an administrator had not formally been named when complaint was filed; held, no relation back; three cases distinguished because they "involved a beneficial conservation or administration of the estate," 224 Pa.Super. at 211, 303 A.2d at 503; *Purman's Estate,* 334 Pa. 238, 5 A.2d 906 (1939) (later appointment of a trust company as executor ratified the early action of its attorney in gathering up decedent's papers and taking them to his office for safe-keeping and proper disposal). *See also Pflugh v. United States,* 124 F.Supp. 607 (W.D.Pa.1954); *Bolitho v. Buck Express, Inc.,* 14 F.R.D. 245 (E.D.Pa.1952).

Under these cases appellee's suit should be allowed, for its purpose is to augment the estate of the decedent.

2

We might end our discussion with what has just been said. Upon reflection, however, we have concluded that in principle the cases we have discussed are unsound. It is all very well to say that the assets of an estate should be conserved, or augmented, but this begs the question. No doubt an asset should be conserved, or acquired, *if* it properly belongs to the estate; but to say that the estate's assets should be conserved, or augmented, in no way helps one answer the question, *Does* the asset properly belong to the estate? Here, for example, it may be said that the railroad holds an asset that would augment the estate-damages on account of Joy's death. Recognition of that fact, however, can only begin—it cannot end—our inquiry whether the railroad should be obliged to pay over that asset even though there was no estate to pay it to when the statutory period of limitation expired. Thus it may be seen that our

inquiry must be, not simply whether there will be a benefit or a detriment to the estate if a doctrine of "relation back" is applied, but whether in all the circumstances "relation back" will achieve a just result.

### 3

The purpose of statutes of limitations is to expedite litigation and thus to discourage delay and the presentation of stale claims. *Insurance Co. of North America v. Carnahan,* 446 Pa. 48, 284 A.2d 728 (1971). Thereby the statutes promote finality and stability, *Schmucker v. Naugle,* 426 Pa. 203, 231 A.2d 121 (1967), and "[w]hile time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary," *id.* 426 Pa. at 206, 231 A.2d at 123.

In this case we are persuaded that the objectives sought by the statute of limitations were fulfilled within the statutory period. When the complaint was filed, it represented a timely statement of every element of the claim, except in one respect: the plaintiff appellee had not been formally named administrator. That deficiency, however, was minimal. At the time the complaint was filed, that is, within the statutory period, appellee had applied for letters of administration. Under the provisions of the Decedents, Estates & Fiduciaries Code, Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 P.S. § 3155(b)(3),[1] appellee as decedent's

---

1. In its entirety, that section provides:

§ 3155. Persons entitled

(a) Letters testamentary.—Letters testamentary shall be granted by the register to the executor designated in the will, whether or not he has declined a trust under the will.

(b) Letters of administration.—Letters of administration shall be granted by the register, in such form as the case shall require, to one or more of those hereinafter mentioned and, except for good cause, in the following order:

(1) Those entitled to the residuary estate under the will.

(2) The surviving spouse.

(3) Those entitled under the intestate law as the register, in his discretion, shall judge will best administer the estate, giving preference, however, according to the sizes of the shares of those in this class.

father had a prior right to be appointed; having applied to be appointed, he was unlikely not to pursue his application to completion. Nor had anyone else applied. The only thing that held up the issuance of letters was appellee's failure to post a nominal bond of $1000. While we grant that the bond represents something of a contingency, we nonetheless find that in the circumstances, appellee's appointment as administrator was substantially assured at the time the complaint was filed, that is, within the statutory period of limitations.

Comparable reasoning was used in *Beckman v. Owens*, 135 Pa.Super. 404, 5 A.2d 626 (1939). There this court permitted a suit against an estate although the executrix named in the decedent's will was formally granted letters testamentary after the statute ran. The court held:

> [A]n executor "derives his authority to act from the will. The granting of letters testamentary by the register of wills is a pro forma act, to give effect to the will of the testator." . . . "[P]arties, upon whom is a necessity of present action, may proceed on the presumption that [the executor appointed] will accept, and their action is valid until he actually renounces, or they have notice that he will not accept. ["] 135 Pa.Superior Ct. at 408, 5 A.2d at 627.

Similarly, here appellant as the defendant railroad could "proceed on the presumption that" appellee's appointment as plaintiff-administrator would be completed. Given this fact, the relationship between the parties was not affected with the sort of instability that statutes of limitations seek to preclude.

> (4) The principal creditors of the decedent at the time of his death.
>
> (5) Other fit persons.
>
> (6) If anyone of the foregoing shall renounce his right to letters of administration, the register, in his discretion, may appoint a nominee of the person so renouncing in preference to the persons set forth in any succeeding clause.
>
> (c) Time limitation.—Except with the consent of those enumerated in clauses (1), (2) and (3), no letters shall be issued to those enumerated in clauses (4) and (5) of subsection (b) until seven days after the decedent's death.

A contrasting result was reached in *Lovejoy v. Georgeff, supra*. There, the plaintiffs were a child and his father, the complaint alleging that the child had been hurt by a driver who had died, and whose estate was named as the defendant. The plaintiffs applied for the issuance of letters of administration for the estate, notifying the parents of the decedent of the application, and directing them to appear before the Register of Wills within 10 days to take action or explain their position with regard to the application.[2]  Before the 10-day period expired, two events occurred: the plaintiffs filed a complaint against the decedent's father as "administrator" of the estate; and the statute of limitations ran.  This court held that the appointment of the father as administrator did not relate back to the filing of the complaint.  Although the court relied in part on the benefit/detriment analysis of when there will be relation back, 224 Pa.Super. at 211, 303 A.2d at 503, it is noteworthy that when the complaint was filed, the identity of the administrator was uncertain; either parent could have renounced the right to letters and the other accepted, or both could have renounced.[3]  At the time the statute ran, therefore, there could have been no such presumption as in *Beckman v. Owens, supra*, and as in the present case, that the father would be administrator.[4]  Thus it was quite possible that the complaint had identified as a party someone who was not, and would not become, a party, so that the complaint might have been served on the wrong person entirely.  This possibility introduced the sort of instability not present in *Beckman* or the present case, and was fatal.  *See Powell v. Sutliff*, 410 Pa. 436, 189 A.2d 864 (1963) (court allows amendment of complaint after running of statute, since the correct party was timely sued, although under an incorrect designation; it distinguishes—and would not permit amendment

2.  *See*, Decedents, Estates & Fiduciaries Code, supra, § 764.

3.  *See*, Decedents, Estates & Fiduciaries Code, *supra*, § 3155(b)(6) quoted in note 2 *supra*.

4.  In *Lovejoy* the father did later accept the letters, his wife renouncing her right to them.

in—cases in which plaintiff tries to substitute entirely new party after statute runs).[5]

Affirmed.

HOFFMAN, J., concurs in the result.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

---

**5.** Although we have commented adversely on the benefit/detriment analysis, we should perhaps add that we have not sought to substitute any exclusive alternative approach. Other cases may present situations where it will be appropriate to vindicate other concerns. *See, e. g., Stephenson v. Wildasin Estate*, 48 Pa.D. & C.2d 684 (1969) (suit permitted against estate where complaint naming certain individual defendant was filed within statutory period, plaintiff learning only then that the individual had died; while letters were sought during the statutory period, they could not be issued before it ran).