J-A20039-22

2023 PA SUPER 45

| | | |
|---|---|---|
| DENIA EDWARDS, PERSONAL REPRESENTATIVE OF THE ESTATE OF DOUGLAS A. EDWARDS | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| NORFOLK SOUTHERN RAILWAY COMPANY | : : : : : | No. 826 EDA 2021 |
| Appellant | : | |

Appeal from the Order Entered November 2, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 181003685

BEFORE: STABILE, J., McCAFFERY, J., and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.:           **FILED MARCH 21, 2023**

Under the relation back doctrine, our courts, in certain situations, have validated the acts of a personal representative of an estate that predate their official appointment. In this interlocutory appeal by permission, we consider whether the doctrine applies when a plaintiff timely files an action on behalf of an estate but does not apply to be appointed the personal representative until after the statute of limitations has run.

Finding that the doctrine applies in such situations, the Court of Common Pleas of Philadelphia County (trial court) denied the motion for summary judgment filed by Norfolk Southern Railway Company (Norfolk

_____

[*] Retired Senior Judge assigned to the Superior Court.

Southern) to dismiss the action filed by Denia Edwards (Edwards), personal representative of the estate of Douglas A. Edwards, her late husband's estate. Norfolk Southern appeals from that order and argues that the relation back doctrine is inapplicable here because Edwards did not apply to be the personal representative of the estate until two months after the expiration of the statute of limitations. After review, we affirm and hold that her appointment as personal representative of her late husband's estate relates back to her filing the complaint.

**I.**

On October 27, 2015, Douglas A. Edwards died. On October 26, 2018, with one day left before the statute of limitations expired, Edwards filed an action under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60, alleging that her late husband's renal cell cancer was caused by his two-decade-plus employment with Norfolk Southern.[1] The complaint named the plaintiff as "Denia Edwards, personal representative for the estate of Douglas A. Edwards." At the time, however, Edwards had neither applied for nor been appointed the personal representative of her late husband's estate, even though she was named the executor in his last will and testament. On December 27, 2018, two months after the statute of limitations for a FELA

---

[1] The statute of limitations for bringing a FELA action is three years. **See** 45 U.S.C. § 56 ("No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued.").

action had run, Edwards finally applied to be the personal representative of her late husband's estate in Mercer County, West Virginia, which is where she and her late husband lived.[2]

Norfolk Southern filed preliminary objections for lack of personal jurisdiction, which were denied after Edwards filed an amended complaint.[3] Norfolk Southern then filed an answer and new matter raising the statute of limitations as a defense, following which it moved for summary judgment on that basis asserting that the action was time-barred because Edwards did not apply to be the personal representative until after the statute of limitations had expired. Edwards countered that her appointment as personal representative related back to her filing the complaint. The trial court agreed and denied summary judgment. After the trial court refused to certify its order as an appealable interlocutory order, Norfolk Southern petitioned this Court for permission to appeal under Pa.R.A.P. 1311(b), which we granted.

---

[2] Under West Virginia law, "[a] person appointed to be the executor of a will shall not have the powers of executor until he or she qualifies by taking an oath and giving bond, unless not required to post bond by § 44-1-8 of this code… ." W. Va. Code § 44-1-1.

[3] Norfolk Southern properly did not raise their statute of limitations defense in their preliminary objections. *See Sayers v. Heritage Valley Medical Group, Inc.*, 247 A.3d 1155, 1159 (Pa. Super. 2021) ("Generally, a statute of limitations defense is properly raised in new matter and not in preliminary objections."); Pa.R.Civ.P. 1030(a) ("[A]ll affirmative defenses including but not limited to the defenses of ... statute of limitations ... shall be pleaded in a responsive pleading under the heading 'New Matter' ").

Norfolk Southern then filed this appeal to argue that summary judgment should have been granted because Edwards waited until *after* the statute of limitations to apply to be appointed the personal representative of her late husband's estate.

## II.

We begin by reviewing the relation back doctrine and the key cases addressing the doctrine. Generally, "all actions that survive a decedent must be brought by or against the personal representative" and "a decedent's estate cannot be a party to litigation unless a personal representative exists." **Salvadia v. Askbrook**, 923 A.2d 436, 440 (Pa. Super. 2007) (citation omitted). The relation back doctrine, however, will sometimes be applied as an exception to the general rule. As we have explained:

> Simply stated, the doctrine of relation back as applied to cases where an estate is a party means that the courts under certain circumstances will validate the acts of the personal representative of the estate which preceded the date of his official appointment. Thus, where a plaintiff, acting as the personal representative of an estate, initiates an action before the statute of limitations has run, but also before his or her appointment as personal representative has been finalized, the doctrine of relation back may be applied in appropriate circumstances to validate the filing of the action, even though the plaintiff's appointment is not finalized until after the limitations period has expired.

**Prevish v. Northwest Med. Ctr. Oil City Campus**, 692 A.2d 192, 201 (Pa. Super. 1997) (*en banc*) (internal quotations and citations omitted).

In the late 1970s, the doctrine was applied in three cases in which the plaintiffs applied to be the personal representative but were not formally

appointed until after the statute had run. The first case was **_McGuire v. Erie Lackawanna Ry. Co._**, 385 A.2d 466 (Pa. Super. 1978). In **_McGuire_**, the plaintiff petitioned to be the administrator of his daughter's estate after she was hit and killed by a train. While he paid the filing fee, the letters of administration were not issued because he did not post the bond. Before the statute of limitations ran, he filed a survival action alleging that he was the administrator of his daughter's estate. Three weeks later, he finally posted the bond and was issued the letters of administration. The defendant moved for summary judgment because the statute of limitations had run before the letters were issued. The trial court denied summary judgment and certified its order as involving a controlling question of law.

On appeal, we held that the father's appointment as administrator related back to when he filed the action. We began by noting that the relation back doctrine had generally been limited to actions that benefit an estate. We found this test too limited, however, because it did not answer whether a railroad should have to pay an asset to an estate that did not exist at the time the limitations period expired. **_Id_**. at 467-68. As a result, we suggested the better test was "whether in all circumstances 'relation back' will achieve a just result." **_Id_**. at 468.

To answer what a just result would be in the case, we emphasized that the purpose of statutes of limitations is to "expedite litigation and thus to discourage delay and the presentation of stale claims" and "promote finality

and stability." *Id*. (citations omitted). With this in mind, we found that the plaintiff had done enough within the statutory period to fulfill the purposes of the statute of limitations.

> When the complaint was filed, it represented a timely statement of every element of the claim, except in one respect: the plaintiff appellee had not been formally named administrator. That deficiency, however, was minimal. At the time the complaint was filed, that is, within the statutory period, [the plaintiff] had applied for letters of administration. Under the provisions of the Decedents, Estates & Fiduciaries Code, Act of June 30, 1972, P.L. 508, No. 164, [§] 2, 20 P.S. [§] 3155(b)(3), [the plaintiff] as decedent's father had a prior right to be appointed; having applied to be appointed, he was unlikely not to pursue his application to completion. Nor had anyone else applied. The only thing that held up the issuance of letters was appellee's failure to post a nominal bond of $1000. While we grant that the bond represents something of a contingency, we nonetheless find that in the circumstances, appellee's appointment as administrator was substantially assured at the time the complaint was filed, that is, within the statutory period of limitations.

*McGuire*, 385 A.2d at 468 (footnote omitted).

We then noted that this reasoning was similar to that used in *Beckman v. Owens*, 5 A.2d 626 (Pa. Super. 1939), a case in which we allowed a suit against an estate even though the executor named in the decedent's will was not granted testamentary letters until after the statute ran. In so noting, we quoted *Beckman's* holding that

> (A)n executor "derives his authority to act from the will. The granting of letters testamentary by the register of wills is a pro forma act, to give effect to the will of the testator." . . . "(P)arties, upon whom is a necessity of present action, may proceed on the presumption that (the executor appointed) will accept, and their action is valid until he actually renounces, or they have notice that he will not accept. (")

*McGuire*, 385 A.2d at 468 (quoting *Beckman*, 5 A.2d at 627) (omission in original) (internal citation omitted).

We then contrasted its facts with those in an earlier case in which this Court declined to apply the relation back doctrine. In *Lovejoy v. Georgeff*, 303 A.2d 501 (Pa. Super. 1973), the plaintiff timely filed a writ of summons on behalf of his injured son against the father of the deceased driver as "administrator" of the driver's estate. The plaintiff applied for the issuance of letters of administration for the estate but the letters were not issued until after the statute of limitations had run. We distinguished these facts by noting that

> when the [writ of summons] was filed, the identity of the administrator was uncertain; either parent [for the deceased driver] could have renounced the right to letters and the other accepted, or both could have renounced. At the time the statute ran, therefore, there could have been no such presumption as in [*Beckman*] and as in the present case, that the father would be administrator. Thus it was quite possible that the [writ of summons] had identified as a party someone who was not, and would not become, a party, so that the [writ of summons] might have been served on the wrong person entirely. This possibility introduced the sort of instability not present in *Beckman* or the present case, and was fatal.

*McGuire*, 385 A.2d at 469 (footnotes omitted). Thus, unlike *Lovejoy*, the *McGuire* court concluded that the defendant railroad could "proceed on the presumption that" the plaintiff's appointment as administrator would be completed. *Id*. at 468-69. For that reason, the relationship between the plaintiff and the defendant "was not affected with the sort of instability that statutes of limitations seek to preclude." *Id*. at 469.

We reached a similar result a year later in ***D'Orazio v. Locust Lake Vill., Inc.***, 406 A.2d 550 (Pa. Super. 1979). There, the decedent was a child who drowned in defendants' lake. Before the statute of limitations ran, the decedent's mother filed (1) a petition for letters of administration and (2) a complaint against the defendant, naming herself administrator of her son's estate. The mother assumed that letters had been issued because she had obtained the bond and paid its premiums for several years. After the statute of limitations had run, however, she learned that the letters had not been issued because she did not execute the bond. Upon learning this, she signed the bond and was issued the letters. The trial court, however, dismissed the complaint because the letter had not been acquired until after the statute of limitations had run.

On appeal, we reversed and held that our decision in ***McGuire*** compelled finding the relation back doctrine applied, explaining:

> Although [the plaintiff] here was finally granted letters much longer after the statute's running than was [the plaintiff in ***McGuire***], this fact does not alter our disposition. The crucial factors are that letters had been requested and the action commenced within the statutory period, and [the plaintiff's] appointment as administratrix, under the circumstances of this case, "was substantially assured at the time the complaint was filed, ... within the statutory period of limitations."

***D'Orazio***, 406 A.2d at 552 (quoting ***McGuire***, 385 A.2d at 468).

Not long after ***D'Orazio***, our Supreme Court addressed a similar scenario in ***Estate of Gasbarini v. Medical Ctr. of Beaver Cnty.***, 409 A.2d 343 (Pa. 1979). In ***Gasbarini***, the decedent died while a patient in the

- 8 -

defendant hospital and under the care of the defendant physicians. The decedent's widow promptly applied for letters of administration but her counsel failed to post bond. Counsel later filed a writ of summons against the defendants, naming the decedent's estate as plaintiff. Counsel again named the estate as plaintiff when he later filed a complaint asserting wrongful death and survival actions. Defendants responded by filing preliminary objections alleging that the estate was not a proper party. When counsel failed to respond, the complaint was dismissed.

Unbeknownst to the widow, counsel was suspended and later disbarred. As a result, she hired new counsel and was named administrator of her husband's estate after posting the bond. Counsel then petitioned to reinstate the complaint and amend its caption to add the widow as the estate's personal representative, which the trial court granted. On appeal, we reversed and ordered that the complaint be dismissed. On allowance of appeal, however, our Supreme Court adopted our reasoning in *McGuire* in applying the relation back doctrine in the widow's favor.

> The original complaint, filed by [prior counsel], made clear that the action was based upon our wrongful death and survival statutes. Further, as previously mentioned, the complaint made clear that [decedent's widow] was bringing this action in her capacity as administratrix of the decedent's estate.
>
> * * *
>
> We believe the instant case is on all fours with *McGuire* and we believe its reasoning is persuasive. Instantly, the only deficiency in [plaintiff's] complaint was the fact she had not yet been named administratrix of decedent's estate. All other requirements,

however, had been completed within a short time period after decedent's death and within the applicable statute of limitations for either a wrongful death or survivor action. As we believe the appointment of appellant as administratrix should relate back to the … date on which the complaint was filed, we find that neither action is barred by the applicable statute of limitations.

*Id*. at 346-347.

In **Wilkes-Barre Gen. Hospital v. Lesho**, 435 A.2d 1340 (Pa. Cmwlth. 1981), our Commonwealth Court considered a scenario where—unlike **McGuire**, **D'Orazio** and **Gasbarini**—the decedent's plaintiffs waited until *after* the statute of limitations had run to apply to be the personal representatives of the estate. There, the plaintiffs' daughter allegedly died of medical malpractice. Two months later, the plaintiffs petitioned to settle her estate but did not apply for letters of administration. The plaintiffs then filed a complaint in the Arbitration Panels for Health Care against the defendants, identifying themselves in the caption and body as individuals and administrators of their daughter's estate. While letters of administration were eventually granted, the plaintiffs neither applied for nor were granted the letters until after the statute of limitations had run. The defendants moved for summary judgment but the arbitrator found that the relation back doctrine applied.

On appeal, the defendants argued that **McGuire**, **D'Orazio** and **Gasbarini** supported reversal because the plaintiffs in those cases applied for letters of administration *before* the statute of limitations had run, thus giving

"substantial assurance that the letters would be granted to the person alleging his or her fiduciary capacity in the pleading." *Lesho*, 435 A.2d at 1342.

Nevertheless, the Commonwealth Court held that the reasoning used in *McGuire* and reiterated in *Gasbarini* applied with equal force to the plaintiff parents in *Lesho*, explaining:

> Absolutely nothing was changed in the [plaintiffs'] complaint by virtue of letters of administration having been granted to them after the statute of limitations had run. From the time the original complaint was filed, the [defendants] were aware that they were being sued for their alleged negligence resulting in the death of a named decedent. Every element necessary to establish the two causes of action against the [defendants] was set forth in the complaint, including the erroneous fact that the [plaintiffs] had been appointed administrators of their daughter's estate.
>
> * * *
>
> In any event, it is our opinion that by permitting the doctrine to apply to the circumstances of this case, the acts of the administrators will have been validated, a just result will have been achieved, the estate will have been benefited and a remedy will not have been lost. Neither will the objectives of the statute of limitations have been disturbed.

*Id*. at 1343.

Finally, this Court revisited the relation back doctrine in the context of a survival action in *Prevish v. Northwest Med. Ctr. Oil City Campus*, 692 A.2d 192, 201 (Pa. Super. 1997) (*en banc*). There, the plaintiff's wife allegedly suffered a stroke and paralysis because of defendants' medical malpractice. After she died, the plaintiff filed a writ of summons against the defendants, with a caption naming the plaintiff as his wife's estate. In his subsequent complaint filed after the statute of limitations had run, the plaintiff

listed himself as the plaintiff and alleged that he had been appointed the executor of the estate. The defendants filed preliminary objections to strike the complaint because the plaintiff had not obtained consent or leave to amend the complaint's caption to correct of the name of a party. The trial court agreed and declined to apply the relation back doctrine because (1) the writ of summons named the estate as plaintiff, and (2) no personal representative had been designated until after the statute had run.

On appeal, the plaintiff argued that the trial court should have allowed him to correct the caption to reflect his appointment as executor of his wife's estate. To address this contention, the *Prevish* court reviewed all the above cases and found them distinguishable.

> In *McGuire, D'Orazio,* and *Lesho*, a survival action was commenced by the timely filing of a complaint the caption of which identified the plaintiff by name as the administrator of the decedent's estate. In *Gasbarini,* a survival action was commenced by the timely filing of a complaint the caption of which named the decedent's estate as the plaintiff, but the body of which explained that the plaintiff was in fact the administratrix of the estate. In each case the designation of the plaintiff as administrator/administratrix was premature, as certain steps remained to be taken which were not accomplished until after the statute of limitations had run. In all four cases, however, the defendants were notified, **before the statute of limitations had run**, of the fact that an action had been filed against them by a named individual who was, at least putatively, the personal representative of the decedent's estate. Insofar as the commencement of the action was concerned, nothing remained to be done after the limitations period had expired but to formalize the plaintiff's previously asserted appointment as personal representative.

*Prevish*, 692 A.2d at 204 (emphasis in original).

- 12 -

With this in mind, the **Prevish** court went on to find that the relation back doctrine did not apply to the plaintiff's actions because

> …[t]he writ of summons was the only document filed before the limitations period expired, and its caption identifies the estate of the decedent as the plaintiff. Such a writ is, of course, a nullity. Moreover, the writ does not identify the executor of the estate, nor does it inform the defendants that there is, even potentially, an executor (that is, that the decedent died testate). Concerning the parties' relationship, these facts evidence "the sort of instability that statutes of limitation seek to preclude." **McGuire**, **supra**.
>
> [Plaintiff] has cited no case, and we are aware of none, in which the relation back doctrine was applied to ratify, post-appointment, the attempted commencement of an action by a personal representative whose existence was in no way suggested by the pleading that he filed. We decline to extend the doctrine to encompass such a situation. Accordingly, we affirm the trial court's order dismissing the complaint.

**Id**. at 204-05.

### III.

On appeal, Norfolk Southern argues that Edwards lacked the capacity to bring her action on behalf of her late husband's estate since a FELA action can be maintained only by either the injured person or, if the person is deceased, their personal representative. **See** 45 U.S.C. § 59.[4] It emphasizes that

---

[4] "Any right of action given by this chapter to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury." 45 U.S.C. § 59.

Edwards did not apply to be the personal representative of her late husband's estate until after the statute of limitations had run. Because she failed to do so, Norfolk Southern argues that the complaint was a nullity because Edwards lacked standing to pursue claims on behalf of the estate at the time when she filed the complaint.

As for the relation back doctrine, Norfolk Southern asserts that it does not apply here. It argues that *McGuire*, *D'Orazio* and *Gasbarini* support reversal because the plaintiffs in those cases applied to be the estates' personal representatives *before* the statute of limitations ran. On this point, Norfolk Southern highlights the *D'Orazio* court's statement that the "crucial factors" in allowing the relation back doctrine in that case were "that letters [of administration] had been requested and the action commenced within the statutory period," thus substantially assuring the plaintiff's appointment as the estate's executor. *See D'Orazio*, 406 A.2d at 552. Further, Norfolk Southern contends the presumption that one will be appointed an estate's executor attaches *only* at the time the application is made. *See McGuire*, 385 A.2d at 468-69.

Turning to Edwards, while conceding that a decedent's estate cannot be a party to litigation unless a personal representative exists, she contends that the relation back doctrine applies here. First, she notes that the plaintiffs in *McGuire*, *D'Orazio* and *Gasbarini* all died intestate. Here, in contrast, Edwards was named the executor in her late husband's last will and testament.

Next, she notes that in the most "on point" case on this matter—*Lesho*—the Commonwealth Court rejected the very same argument that Norfolk Southern raises here: that *McGuire*, *D'Orazio* and *Gasbarini* stand for the proposition that the relation back doctrine applies only when the plaintiff applies to be the personal representative before the statute of limitations has run. Rejecting this argument, the *Lesho* court concluded that the reasoning used in *McGuire* and *Gasbarini* supported finding that the relation back doctrine could be applied even the plaintiff waits until after the statute of limitations had run to be appointed the personal representative. Edwards further emphasizes that like the plaintiffs in *McGuire*, *D'Orazio* and *Gasbarini*, she identified herself in the complaint's caption as the personal representative of her late husband's estate, thus notifying Norfolk Southern before the statute of limitations had run that **an action had been filed against it by a person who was, at least putatively, the personal representative of the decedent's estate.**

**IV.**

After review, the trial court did not err in denying summary judgment and concluding that the relation back doctrine applied here.[5]

---

[5] Our standard of review of an order granting or denying summary judgment is well-settled:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is

First, just as we did in **McGuire**, we begin with the purpose of statutes of limitations to determine whether the relation back doctrine can be applied under these circumstances. "Generally speaking, statutes of limitations are rules of law that set time limits for bringing legal claims." **Nicole B. v. Sch. Dist. Of Phila.**, 237 A.3d 986, 993-94 (Pa. 2020). "They serve several purposes: imposing finality on the litigation system; providing defendants with an end to their potential liability; and avoiding litigation of disputes involving stale evidence." **Id**. at 994. As this Court has long recognized, the "purpose of any statute of limitations is to expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims." **McCreesh v. City of Philadelphia**, 888 A.2d 211, 222 (Pa. 2005) (citation omitted).

In **McGuire**, **D'Orazio**, **Gasbarini** and **Lesho**, our courts noted two main reasons why application of the relation back doctrine did not contravene the purpose of statutes of limitations. First, in each of those cases, the

---

clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

**Siciliano v. Mueller**, 149 A.3d 863, 864 (Pa. Super. 2016). Moreover, the standard or review for issues involving the interpretation of a statute of limitations is *de novo* and the scope of review is plenary. **See Erie Ins. Exchange v. Bristol**, 174 A.3d 578, 585 n.13 (2017).

complaint was timely filed within the statute of limitations and set out every element of the plaintiffs' claims. Thus, except for the plaintiffs' formal appointment as personal representative, the defendants in those cases were put on notice before the statute of limitations had run that "an action had been filed against them by a named individual who was, at least putatively, the personal representative of the decedent's estate." **Prevish**, 692 A.2d at 204. Thus, at that stage in those cases, the only thing that remained for the plaintiff to do was to formalize their previously asserted appointment as personal representative. **Id**.

The same applies here. Edwards timely filed her FELA action and set out all the elements of her claims before the statute of limitations had run, thus putting Norfolk Southern on notice that they were being sued. Critically, just as the **Lesho** court recognized, nothing changed concerning those claims by virtue of Edwards later being formally appointed the personal representative. **See Lesho**, 435 A.2d at 1343 ("Absolutely nothing was changed in the [plaintiffs'] complaint by virtue of letters of administration having been granted to them after the statute of limitations had run.").

Second, in each of the four cases, the complaint listed the plaintiff as the personal representative of the estate in the caption or alleged that the plaintiff was the administrator of the estate. **See McGuire**, 385 A.2d at 467; **D'Orazio**, 406 A.2d at 551; **Gasbarini**, 409 A.2d at 345; **Lesho**, 435 A.2d at 1341. Likewise, in both her original and amended complaints, Edwards listed

the plaintiff in the caption as "DENIA EDWARDS, Personal Representative for the Estate of Douglas A. Edwards." Further, she averred in both complaints that she was the personal representative of the estate. *See* Complaint, 10/26/18, ¶ 2; Amended Complaint, 12/17/18, ¶ 2. As a result, while she had not yet applied to be the personal representative of the estate, the complaint put Norfolk Southern on notice that Edwards was bringing the action in her capacity as personal representative of the estate.

On this point, we do not find it fatal to her claims that Edwards waited until after the statute of limitations had run to apply to be the personal representative of her late husband's estate. In *McGuire*, *D'Orazio* and *Gasbarini*, despite each of the decedents dying intestate, it was "substantially assured" that each of the plaintiffs would be appointed the personal representative of the estate. In *McGuire*, the appointment was held up by the plaintiff failing to post the bond; in *D'Orazio*, it was the plaintiff's failure to execute the bond; and in *Gasbarini*, it was plaintiff's counsel failing to post bond. In each case, there was no dispute that the plaintiff would be appointed the estate's personal representative, as the only thing delaying the appointment was the oversight of paying or executing the bond for the letters of administration.

While this case differs from those cases in that the decedent died testate, there was still no real dispute that Edwards would be appointed the personal representative of her late husband's estate since she was named

- 18 -

executor in her late husband's last will and testament. Under West Virginia law, the only thing she needed to do to be appointed the personal representative was file the application of fiduciaries and take an oath in the county in which her late husband's last will and testament had been recorded. *See* W. Va. Code § 44-1-1.[6] Given that Edwards was (1) named the executor in her husband's will, and (2) listed herself as the plaintiff in the timely filed complaint, Norfolk Southern could "proceed on the presumption" that she would seek appointment as personal representative of her late husband's estate. Thus, just as the *McGuire* court concluded, we find that "the relationship between the parties was not affected with the sort of instability that statutes of limitations seek to preclude." *McGuire*, 385 A.2d at 469.

As noted, citing *McGuire*, Norfolk Southern asserts that the presumption that Edwards would seek appointment as personal representative could attach *only* if she made a timely application. Based on our reading, however, *McGuire* states no such thing.

To recap, in *McGuire*, we held that the defendant railroad could presume that the plaintiff would be appointed the personal representative of his daughter's estate because he had applied for letters of administration and had a prior right to be appointed under statute. *Id*. at 468. For support, the

---

[6] Edwards did not need to post bond because she was the sole beneficiary of her late husband. *See* W. Va. Code § 44-1-8(b).

*McGuire* court likened its reasoning to that in *Beckman* in which this Court held that a creditor of the decedent could file suit against the executor appointed in the decedent's will prior to the probate of the will and issuance of letters testamentary. As noted, the *McGuire* court quoted the *Beckman* court's holding that an executor "derives his authority to act from the will. The granting of letters testamentary by the register of wills is a pro forma act, to give effect to the will of the testator." *Id*. at 468 (quoting *Beckman*, 5 A.2d at 627). The *McGuire* court further quoted *Beckman's* holding that the parties "may proceed on the presumption that (the executor appointed) will accept, and their action is valid until he actually renounces, or they have notice that he will not accept." Thus, as the above quoted sections show, the *McGuire* court was equating the plaintiff father in its case with an executor named in a decedent's will who is presumed to have accepted the appointment until that appointment is renounced.

Finally, we address two other arguments raised by Norfolk Southern. First, as noted, Norfolk Southern highlights that in *D'Orazio*, we stated that the "crucial factors" in applying the relation back doctrine in that case were that the plaintiff requested the letters of administration before the statute of limitations had run. *See D'Orazio*, 406 A.2d at 552. In that case, however, the plaintiff mother did not obtain the letters of administration until about a year-and-a-half after the statute had run, which was substantially longer than the delay in *McGuire*. Thus, read in context, the *D'Orazio* court's statement

that it was "crucial" that the plaintiff request the letters before the statute had run was meant to answer the concern that the plaintiff mother was not granted the letters until "much longer after the statute's running than [the plaintiff in *McGuire*.]" *Id*.

Second, Norfolk Southern asserts that *Lesho* has no persuasive value because (1) it is a Commonwealth Court decision,[7] and (2) its factually distinguishable because, unlike the defendants in *Lesho*, Norfolk Southern raises its statute of limitations defense at its first opportunity. The second point is well taken, since the *Lesho* court observed that none of the defendants denied that the plaintiffs were administrators of their daughter's estate until they were granted leave to file amended answers. *See Lesho*, 435 A.2d at 1343.

Before that observation, however, the Commonwealth Court made clear that its decision rested on the plaintiffs timely filing their complaint and putting the defendants on notice that they were sued by the plaintiffs in their capacity as the personal representatives of the decedent's estate.

> It is true that in every case cited by [the defendants], where the [relation back] doctrine has been applied, an application for letters was made before the statute of limitations expired. Nevertheless, we feel compelled to apply the doctrine here because our analysis of the reasoning used in *McGuire* and reiterated in the [*Gasbarini*] demonstrates that it must likewise prevail here. Absolutely nothing was changed in the [plaintiffs'] complaint by

---

[7] "Commonwealth Court decisions do not bind this Court, but we may consider them as persuasive authority." *Cuth v. Cuth*, 263 A.3d 1186, 1191 n.5 (Pa. Super. 2021) (citation omitted).

virtue of letters of administration having been granted to them after the statute of limitations had run. From the time the original complaint was filed, the [defendants] were aware that they were being sued for their alleged negligence resulting in the death of a named decedent. Every element necessary to establish the two causes of action against the [defendants] was set forth in the complaint, including the erroneous fact that the [plaintiffs] had been appointed administrators of their daughter's estate.

*Id*.

Like the Commonwealth Court in *Lesho*, we read nothing in *McGuire*, *D'Orazio* or *Gasbarini* as precluding the conclusion that the trial court reached in this case. Indeed, Edwards was named the executor in her late husband's last will and testament and timely filed her FELA action in which she averred that she was the personal representative of her late husband's estate. Like the defendants in *McGuire*, *D'Orazio*, *Gasbarini* and *Lesho*, Norfolk Southern was notified before the statute of limitations had expired that an action had been filed against it by a plaintiff "who was, at least putatively, the personal representative of the decedent's estate." *Prevish*, 692 A.2d at 204. While it may be preferable that the plaintiff seek appointment before the statute runs, we do not find that failure to do so compels dismissal of a complaint when the plaintiff is the named executor and avers that she is the personal representative in the timely-filed complaint.

Order affirmed. Case remanded. Jurisdiction relinquished.

Judge McCaffery joins the Opinion.

Judge Stabile files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/21/2023</u>